UNITED STATES v. CHICAGO, R. I. & P. RY. CO.

(District Court, N. D. Illinois, E. D.   November 28, 1913.)

No. 10,589.

CARRIERS (§ 37*)—TRANSPORTATION OF ANIMALS—28-HOUR LAW—WILLFULLY
AND KNOWINGLY.

   Defendant, an initial carrier of cattle, delivered cars to the Illinois Central Railroad Company, its next connecting carrier, when 9 hours of the 28-hour confinement period remained (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1911, p. 1341]); but this company refused to accept the cattle because it could not reach its nearest feeding point under 9 hours, and that, as the time would be nearly up when the cars would reach its next connecting carrier, the shipment would be refused by such carrier. Defendant refused to receive a redelivery of the cars, but after the expiration of the period hauled the stock to its yards, where the stock was unloaded. *Held*, that such facts did not show that defendant "willfully and knowingly" confined the cattle for a period longer than that authorized and did not render it liable to a penalty.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. § 37.*]

Action by the United States against the Chicago, Rock Island & Pacific Railway Company to recover penalties for violation of the 28-hour law. Judgment for defendant.

The facts agreed to are as follows:

On November 22, 1910, at 3:30 p. m., defendant railway company received five cars of cattle at Selma, Iowa, billed to Philadelphia routed over its lines to Chicago; thence over the Illinois Central Railroad to Kankakee, Ill.; thence via the Big Four and connecting lines to destination. Releases authorizing confinement of cattle for 36 hours were duly executed. The defendant brought the cars to Chicago, delivered them to the Illinois Central Railroad at 6:30 p. m. November 23, 1910, at Burnside, the interchange point for delivery of cars to such connecting carrier, the cars being placed on interchange track, waybills delivered to the representative of the connecting carrier, the cars removed by the latter to its own yards. At 7:30 p. m., and again at 8:30 p. m., November 23, 1910, a representative of the connecting carrier telephoned to the Blue Island yard of the defendant that the former would not accept the stock. The defendant's yardmaster promised to let the connecting railroad know what to do about the matter; and at 10:30 p. m. an employé of the defendant advised the connecting carrier of the former's refusal "to accept the cars back." At 11:30 p. m. November 23, 1910, the cars were placed back on the interchange track by the Illinois Central Railroad Company, and the waybills had been placed in a box at Burnside used jointly by the Illinois Central Railroad Company and the defendant for that purpose. The reason given by the Illinois Central Railroad was that they did not have time to reach their nearest feeding point under 9 hours; that their train No. 75, for Kankakee, being the connection with the Big Four, left at 6:30 p. m., and the cars did not arrive in time to make this train; that their next train left at 11 p. m., and this would not reach Kankakee until the time limit was nearly up; and that "the shipment would be refused by the Big Four on that account."

The defendant maintains no switching service on its South Chicago branch during the night, and the cars were permitted to stand on the interchange track just as they were placed by the Illinois Central until 9:35 a. m. November 24, 1910. The defendant, at 9:35 November 24, 1910, sent a switch engine to Burnside, and had the cars hauled to its stockyards at Burr Oak, where the stock was unloaded at 10:30 a. m. November 24, 1910.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. H. Wilkerson, U. S. Atty., of Chicago, Ill.
M. L. Bell, of Chicago, Ill., for defendant.

GEIGER, District Judge (after stating the facts as above). The question in the case is whether the defendant has violated the "28-Hour Law" (Act June 29, 1906), which penalizes carriers for confining cattle in cars for a longer period than the prescribed period of 28, or a stipulated period (as in the present case) of 36 hours. It will be noted that, 9 hours before the expiration of such time, it delivered the cars to the connecting carrier, which received them—apparently in fulfillment of its obligation to continue the transit. Although its obligation had attached, such connecting carrier seems to have renounced it because the 9 hours remaining, although sufficient for performance of its obligation to transport the cars, would be so nearly consumed that the next succeeding carrier would refuse to accept them. Why it would refuse does not appear, but perhaps because of the inability of such next succeeding carrier, in view of the time and place of delivery, to comply with the statute.

Now it may be assumed that, in transportation through a connection of carriers, each carrier must observe the statute. That is, no carrier who contributes "knowingly and willfully" to the acts which constitute a violation of the statute can escape the penalty because another also participated therein or contributed thereto. But it cannot be true that the carrier, who, having discharged its obligation in the transportation without a violation of the statute, stands, after delivery to a connecting carrier, as a sort of absolute guarantor of the latter's compliance with the statute. The defendant herein surrendered to the Illinois Central Railroad, rightfully, and in discharge of its obligation as a carrier, the possession of the cars. Therefore, in so far as the duty of compliance with the statute rests upon such possession under an obligation to transport, the defendant had freed itself, rightfully (if not absolutely, certainly provisionally), from the capacity, and hence the necessity, on its part, further to discharge the statutory obligation. When, how, or by force of what circumstance, disclosed in the record before us, was it reinstated, as it were, to the obligation of the statute? Certainly, the notification by the connecting carrier, after it had, according to customary method of interchange, fully accepted the cars, and removed them to its own yards, that it would not accept them, did not compel the defendant at once to submit to reassumption of full responsibility for their further transit and the discharge of the statutory duty. It refused, properly, to submit to the connecting carrier's attitude, based as it was wholly upon a prophecy, or conjecture that a further connecting carrier might or would, nine hours later, decline to accept the cars. Now in this situation, and, so far as the record shows, without the actual knowledge of the defendant, the connecting carrier again placed the cars upon the defendant's interchange track, where they remained until the statutory period had expired. In my judgment the facts fall very short of showing a retaking of the cars with such full knowledge as to justify the finding that it "willfully and knowingly" failed to obey the

statute. The contention advanced by the government, that the defendant, through the refusal and acts of the connecting carrier, was reinstated, constructively, in the possession of the cars, it seems to me, negatives, rather than supports, the claim of willfully or knowingly failing to discharge the statutory obligation.

Judgment for the defendant.